053, Nevarez Law Firm v. Dona Ana Title Company. You may proceed. Good afternoon. May it please the Court. I'm Michael Nevarez on behalf of Nevarez Law Firm. I've got five minutes, I understand, for rebuttal and 15 minutes for direct. I'd like to address the issue of standing primarily. I believe that this Court's cases in Lexington Insurance v. Forest and Symmetra Life Insurance v. Rapid Settlement, both addressed on page 41 of our brief, support our position. The appellant has sustained a particularized injury sufficient for Article III standing in the form of loss of attorney's fees as well as the loss of the ability to pursue a contingent fee interest in the RICO as well as the state cases that is traceable to defendants, rather to appellee's direct and foreseeable actions. When we're talking about standing, obviously, as you well know, we're talking about who has the right to bring those claims. You mentioned Lexington, but isn't Lexington, wasn't the plaintiff really in the position of your client and not in the position of the lawyer? To find standing in Lexington seems to me would be comparable to finding standing, in this case, for your client to bring these claims. Well, I believe that the Lexington case did address the attorney's fees. Right, but being brought by the client whose need for representation generated the fees, not by the lawyer who didn't get the fees. No, that's correct, but it does argue for the attorney's fees being recoverable. This is a question of who gets to make the recovery. Just telling what you know, that's what standing's about. It seems to me we have found a case that is dealing with somebody in your shoes, almost literally. Does that person have standing to recover your own attorney's fees that were not paid you by your client for the work that your client needed you to do? Well, we believe that the tort of another theory, which we address on page 42 through 44 of our brief, cites nine Texas cases that provide standing for a law firm to be able to recover. The Symetra case from this court, as well as the DP Solutions case, also addressed on page 44 of our brief, also supports the tort of another theory. So I think in terms of standing, those cases, those nine Texas cases and those two Fifth Circuit cases, explain that a law firm such as ourselves can recover attorney's fees incurred in a previous matter as damages. So that's where we, I think, have our footing on standing. We also, on page 46 through 57, address the justiciable interest that was provided under our retainer agreement, as well as Texas law to go and assert our own cause of action under RICO to recover the damages sustained by the appellant. Let me ask you on tort of it. I'm sorry. I've asked some questions. Go ahead. That comment you just said, your retainer agreement, it's not . . . you don't actually have an assignment of the interest in the previous case. You have a security interest in whatever they recover, but you didn't get assigned their claim. Sometimes lawyers or people that finance cases or things will get these assignments. There is no . . . you're not arguing that you have a right to recover because of an assignment, that you have standing because of an assignment, are you? No. The attorney's retainer agreement actually grants, and that's quote, unquote, grants the appellant herein an interest in the causes of action that we were pursuing. Not in the cause of action, only in the proceeds or property received. The text does not say in the cause of action itself. It says in any proceeds received. It says cash, checks, monies, proceeds, or other property received and or received. Isn't that correct? Yes. That's not the same thing as an assignment or an interest in the claim itself, is it? I believe it is. I believe it's clear that the client was granting us an interest not only in the proceeds but in the matter. Where do you see that? Where does it say that? At the end of the sentence, it says where the clause is that we cite. At the end, the last part that's in bold, it says that they grant in the matter subject of the retainer agreement. So technically there's no assignment, but there was a granting of an interest, a justifiable interest, and that's, I think, reflected by the cases, the Texas State cases that we cite on page 46 through 47. But you're not trying to recover in this lawsuit recovered fees that were not paid to you by your client, are you? We're trying to recover the damages that we sustained as a result of the direct and foreseeable actions of the appellees. But they didn't receive any proceeds or property, did they? Who was that? Your clients. They were awarded $240,000 in attorney's fees. They were awarded in total approximately $2 million in damages. So they did receive property. But is that what you're trying to recover, is the property received and or received? We're trying to recover the attorney's fees that remain unpaid as damages. Okay. We're not going after our client's damages, and I think the district court concurred with that. So our position is that, again, there was a particularized injury, in fact, sufficient to provide Article III standing, traceable to the conduct of the appellees. That was foreseeable and the direct consequence of the damages sustained. And a judgment will redress the injury. So I think we have sufficient Article III standing. In addition, even if there was no standing, the district court should not have dismissed the pleadings with prejudice, as it didn't have standing. That, we believe, is a monumental legal error. They should have just dismissed the case without prejudice to filing in the state court or undertaking the case, if not on a RICO basis, as supplemental jurisdiction. What is the status of anything against your former clients? Has that been settled or something, or is that- No. Nothing? No, there is no- Nothing pending, nothing was pending, nothing at all? Well, actually- What's the situation? Nothing has been resolved. Essentially, we filed an action against the former client when they converted to Chapter 7. We filed a 523-727 action to contest the discharge. We also filed a proof of claim. All of that got contested. We filed a motion for leave to file a lawsuit against the clients. All of that got dismissed and, in fact, is now currently before this court on appeal. That's in a separate appeal? That's a separate appeal, yes. Now, in New Mexico, we also filed a motion for leave to file a RICO case against the Jaime and Rojas. That's still pending in the New Mexico District Court, or I should say bankruptcy court. Now, I should address, in terms of standing, that on page 67 of our brief, we address the issue of the thoroughbred appellees. They benefited by living eight years on the property without any compensation to our former clients, the Mongees. On page 67, we cite Texas, as well as federal law, that allows for an action to be filed against appellees, the thoroughbred appellees, because they benefited from the conduct of the appellees in living in the property for eight years without any compensation to the Mongees. So I think all of that provides sufficient standing. As far as the dismissal of the case, I should mention that on page 71, we cite an example of our First Amendment complaint, the fact that's in full accordance with this court's decision in benchmark electronics that indicates that under Rule 9, when you assert fraud, you should particularize the who, what, when, and where. And the brief provides one example of hundreds of counts in the RICO matter where we assert the who, what, when, and where in accordance with benchmark electronics. So our contention is that, really, it should not have been dismissed. It appears that the district court did not really look at the particularized Rule 9 contentions that we made or even considered them in the light favorable to the appellant. I wish you would address more than you have already the tort of another theory. Is there any case law in Texas, Texas Supreme Court case law, that has actually adopted that theory on the restatement? Not from the Texas Supreme Court. We do cite on page 42 of our brief. We cite several cases, all of them lower court opinions and at least one federal district court opinion. Are you familiar with the Supreme Court opinion from about 10 years ago, Aiken-Gump versus National Development? I didn't see that cited. No, I'm not familiar with that. Well, I won't ask you about it and how that might address your theory. But I just want to be clear that, to your knowledge, there is no Texas Supreme Court case adopting that theory. Not as of when we filed the appellant's brief. Okay. There's a lot of court of appeal cases that support tort of another theory. But for some reason, I guess the Texas Supreme Court hasn't seen fit to address that. All right. I'm confused. Even if you have standing, you know, the district court alternatively ruled on the RICO claim wasn't pled. I'm concerned about the sandwich chef case and whether you fall into the exception, whether your claim falls into the exception in the sandwich chef case. Do you know what I'm talking about by that? No, I . . . Normally, you have to show that there's been a direct reliance on the defendant's fraudulent predicate act under that case. But there is an exception if there is an injury as a direct and contemporaneous result of fraud committed against a third party. But I don't see how, in this case, the injury is the direct and contemporaneous result of fraud on a third party. Because you wouldn't have . . . your claim, and I'm not talking about . . . I'm not trying to personalize this. But the claim would not exist if you had been . . . if they had been paid and you could have been paid. So it's not a direct result of the Third Parties Act. It's just, it's another way of analyzing this under this framework as opposed to just straight up standing. And so, can you help me with that? Well, I think we bootstrap ourselves by the tort of another theory that allows us to recover our attorney's fees, our damages, as a result of direct and foreseeable misconduct by the appellees. In this case, these transactions that occurred had the direct and foreseeable result of incurring litigation. Because what was conveyed to the monkeys was, in effect, a bad title. When Jaime conveyed the property, he didn't own it. A city bank owned it at the time. The appellees herein today should have advised that because they had a contractual fiduciary duty to my former clients to advise them that there was no title. Had they done that, the matter wouldn't have closed. In addition, there wasn't even enough money to pay all the liens. I understand this is a very unfortunate scenario, but the alleged fraud would have happened in 2005 or 2006, but your injury would be in 2015, wouldn't it? So it's not even contemporaneous as part of the requirement of the fraud being the direct result to the third party. Well, the actual RICO complaint was filed timely within the 10-year statute. I'm not saying that it's statute barred, but what I'm saying is the injury was at a different time. So the injury that injured your client is not the same injury that made your claim. I don't want to say injured you, but made your claim. I'm not sure that's entirely accurate because my clients were awarded $240,000 worth of damages in attorney's fees as part of the bankruptcy court's decision which was sustained by the district court. Those amounts of money were a direct result of the conveyance that should never have occurred if the appellees had done their job under the contract and their fiduciary duty. Thank you, counsel. You save time for rebuttal. Thank you. Good afternoon. I'm Dwayne Danner, and I'm here on behalf of the Appellees Bank of America and Countrywide Home Loans. My clients are referred to as the bank defendants throughout the briefing. To briefly address a few things that counsel for the appellant just said, as far as people having duties to point out the underlying problems that counsel is concerned with in the real estate transaction, there are no such duties as it pertains to my clients, the bank defendants. I would also hold that there's no duties on behalf of the title company defendants either, that they have a contract that deals with that. But there's certainly no fiduciary duty with the bank defendants on anything that has to do with the plaintiff in this case's claims. Additionally, Judge Elrod was asking about the contingent fee contract earlier. I'd just remind the Court and point out that there was a motion to supplement the record which was denied, and I don't believe that's actually part of the record of this case, the second contingent fee contract, and certainly was not in the case down at the trial court either. Does it make a difference? No, ma'am. Consider the language of the contract? No, ma'am. Not at all. Just pointing out it's not in the record. That was my only point. Okay. Okay. The main problem with this entire case is that the plaintiff doesn't have standing. His clients would have standing to bring these claims. And there is he is asserting, trying to assert damages from a potential lawsuit that was never filed and then claim the attorney's fees as recovery from that lawsuit that was never filed. So that just cannot stand, and that's why the district court properly found that there was no Article III standing as it relates to this. I would also point out we cited in the brief the Steele Company's case, and important in there is an interest in attorney's fees is insufficient to create a case where none exists outside of the underlying claims. And I think that's exactly what the appellant is attempting to do here. The court asked a few questions about the tort of another theory, and the two important things in my mind on the tort of another theory are that it requires a plaintiff, in this case a law firm, to be forced to litigate to protect itself from a third party in a lawsuit, and we just don't have that in this case. So the tort of another theory is not something that we have here on either point. Would you say the standing of that theory is in Texas? Is it a knowledge theory that Texas courts would apply? As you correctly pointed out earlier, we don't have a Supreme Court of Texas case on it. There are the lower court cases and the one federal case. But I can't stand here and tell the court that I believe that Texas has fully adopted that. I can't tell you that they have or haven't, because the Supreme Court has not weighed in. But on the argument in your brief that the theory is not appropriately recognized, it would not be appropriate for us to recognize that theory, are you just saying the theory should not apply, does not apply in this case? It should not apply in this case because there was not this force. The plaintiff in this case, the law firm was not forced to defend itself or protect itself against some other action in this matter. Couldn't this have been structured so that there would have been standing, if this is a viable theory, with assignments? There certainly is the possibility, as again you brought up earlier. If this was just assigned, then you would not be here with this standing argument, would you? I don't think so, in all candor. Thank you. I appreciate your candor. That's not the case in this case, but I believe you're correct. Had that been the case, you would be exactly correct. Does that depend on the agreement not being in the record, or are you saying the language of the agreement is not stated? No, no, no. Even if it was in the record, just as Elrod pointed out earlier, the language simply does not create an assignment in my estimation. But lawyers do that with their clients and the plaintiff's side a lot in Texas court, and this just doesn't have that. It doesn't. My father was a plaintiff's lawyer for about 50 years, and I worked in his office right out of school, and we had that in all of the contracts. That was one of my first duties was signing up the clients when they came in, so that was in our contracts. It was. As it pertains to the RICO case, it fails on multiple levels. Again, the appellant's clients would be a potential appropriate RICO plaintiff, as they had a contingency fee contract for that to happen, but the case was never brought. A couple of final points that I'd like to make. There was the appellant tries to make something out of not being able to amend. The record is clear. This was the first amendment complaint that was moved on the motion to dismiss by all parties. There also was never any leave sought throughout the process when the order was issued to try to seek leave to file an additional petition to correct some of the problems. So we would present to the court that that issue has been waived. That really is about all of my presentation. I'm certainly happy to answer any questions or try to that the panel has, but aside from that, I'll give some additional time to my co-counsel. Do you agree that the dismissal should have been without prejudice? I think that's a fantastic question, and another one with all due candor that concerns me a little bit. That's the one thing about the argument this morning that considered me a little bit, or this afternoon that concerned me a little bit. The argument I'd make to the court on that is this. Nobody moved for Rule 11 sanctions, meaning not my clients and not co-counsel's clients, in the underlying case, but Rule 11 attaches the minute that lawsuit is filed. The court has an inherent power under Rule 11 to dismiss cases with prejudice. And whether or not that comes through, the order doesn't say why, but that is certainly a reason in light of the subsequent sanctions action that went on where we had these children that were not even born at the time of this real estate transaction. That's not what it says, though. It's not what it says. I was trying to give the court an alternative reason why it could be, but that's my best argument. So assuming arguendo, and I'm not trying to foreshadow, the court were to affirm but modify the judgment to be a dismissal without prejudice, is there anything legally wrong with that determination? Just to clarify, I would hope the court would be, and I do believe the dismissal with prejudice as to the RICO claim is appropriate. As to whether there are other claims, I would argue, and I think we point this out in our brief, there's maybe a breach of contract claim against the bank clients. There's maybe this you shouldn't have lent me the money claim that we've all dealt with several times. But there are not really any other definable claims against my client, clients, the bank clients. So my position would be reluctantly that the RICO be affirmed as with prejudice, and if the court is not of a mind to like my Rule 11 argument or anything co-counsel has to say, then I would expect there might be a without prejudice as to the rest. Thank you. Yes, ma'am. Anything else I can answer? I think we have your argument. All right. Thank you all for the opportunity. Good afternoon. May it please the Court. My name is Ken Slaven, and I'm here on behalf of Donata Title, First American Title and their employees, below referred to as the Title Company defendants. Mr. Navarez has no claims in this case. The claims he's trying to assert are claims that his clients had that they decided not to pursue. So there simply are no standing for him to assert his former clients' claims. They decided not to, and Texas law doesn't allow the splitting of a cause of action between an attorney on a contingent fee and the client. Counsel, remind me, what's on the record about why these questions or events in the history of this particular property apparently were unknown to the buyers? The Title Company was involved. Was there no title certificate or other information provided? I'm not asking you to admit any liability. What's the story here? According to the petition, there were the complaint that was filed. The Title Company got involved in January 6th of 2006. The transaction closed less than a month later, February 3rd. The Title Company issued a title policy. There were a closing where documents were signed. I think the allegation is Mr. Jaime cut and pasted some signatures or changed some things or did some things. The Title Company, of course, did what title companies do at closing and provided the documents, the title policy, and those kinds of things. So the contract that was signed was before the Title Company ever got involved. The Mongiz contracted to buy this property based on whatever nondisclosures were given to them by Mr. Jaime and Mrs. Rios. So nondisclosure by them may have led them into the transaction, but what they're claiming is you didn't point out what was in your title policy about this. Really, what they're claiming is you didn't tell us about this deed problem, about this foreclosure, that the action was in foreclosure. And it's in New Mexico, which is a little bit unusual, because even when there's been a foreclosure, New Mexico has a 30-day statutory right to redeem. And so what the Title Company, under its insurance, is required to do is to make sure they get good title, which the Title Company did, did whatever had to be done to get that. The prior lien was released. The payoff was done. Closing happened. A few months later, a quick claim deed was filed. They got title. And that's what title companies do. So it's a complaint about a single real estate transaction is the basis for this. It happened in 2006. Mr. Nevarez was not hired until five years later, in 2011. And he wasn't hired to sue my clients or the other appellees. He was hired to sue the people that sold the property to them. And he litigated that and got a judgment for unpaid rent and attorney's fees. And his clients paid him, out of $608,000 billed to him, approximately $300,000 and apparently didn't pay a $311,000 balance. And that's what's led to this suit. But he simply has no standing to assert their claims, which they have chosen not to assert, against our clients. What does the record say about that? About? Their decision not to assert their claims. Is the record silent on this mystery, the great mystery in the room? Well, I can speculate, I can infer from the record. There's nothing that I've seen. I will say, I will make this comment. They had an agreement to pay $5,000 a month. The agreement that's being sued upon here, the second contingency fee deferred fee retainer, to pay a maximum of $5,000 a month. I assume they got tired of paying that and ran out of money. They'd already paid significant sums and decided they weren't going to pursue anything further. That's my assumption. I will disagree a little bit on the contingency fee aspect of whether that would have established standing. We don't have that here, so I don't know that we need to get into that. But the Dow Chemical case, the Texas Supreme Court case, talks about that. And really the only exception that would, because they pose that very question, can an attorney sue on a cause of action where he has an assignment? And that case had an assignment where the plaintiff was dismissed from the suit and the court said, no, these aren't divisible, we're not going to allow it, we don't think. And the only exception to that under Texas law that I'm aware of is where there's a collusion between the plaintiff and the defendant to cut the lawyer out of the fee and settle a case around them. In that very limited instance, the courts will allow a plaintiff with an assignment that's not here, but with an assignment to go after that. So that would be our position on that. So there really, he fails to have any personal claim against these appellees. Do you have a position on Judge Wiener's question? I have no opposition beyond what co-counsel has said. The case that was cited by Mr. Navarro's, Hernandez's case out of the Second Circuit that talked about, you know, if the dismissal is under 12b-1, subject matter jurisdiction dismissal, it has to be without prejudice. It refers to a U.S. Supreme Court case, I think the Willie case, which does allow under a Rule 11 scenario for when there's been a subject matter jurisdiction to still allow Rule 11 sanctions to apply. The district court did not tell us what the basis for that blanket with prejudice dismissal was. That would be the only thing that I'm aware of that would allow it to be with prejudice on everything. I also join in that the court has the power to dismiss the RICO claims with prejudice. No amount of additional paper in another amended claim is going to give him any ability to assert his client's RICO claim. If we decide on the basis of lack of standing, we don't have to get to the RICO claim, do we? Not if you do the 12b-1, no, sir. You would only get to it on the 12b-6. That's correct. So those are our positions. I would like to, you know, we talked about the Dow Chemical case. He also cited the Law Offices of Wendell Turley, and I think it's important because it's right on point on this particular contingency fee. It basically distinguishes between an attorney contract that allows for an assignment and uses the language assignment of a claim versus a right to collect a percentage of a net recovery. And this is, as he alleges repeatedly, is seeking a percentage of a net recovery, which at least at this point is conjectural because his clients, the Mongas, have never sued. So they're not going to get a net recovery without pursuing the claim, and his claim is wholly derivative of their claim, as the Dow Chemical case, the Supreme Court says. That's really all I have to present unless the Court has any further questions of me. I believe we have your argument. Thank you. Thank you. Thank you. I'd like to very quickly address the issue of assignment to counsel for the title companies addressed. As we state on page 46 and 47 of our opening brief, under Texas law, we, under our contingent fee agreement, which is very clear and is present herein, according to the district court, conferred that there was a contingent fee interest. The appellees conferred. Anyway, under the cases on the— You kind of got a low voice for me. What did you just say? Were you addressing whether this is part of the record or not? I couldn't understand what you were saying. No, I was saying that the district court, as well as appellees' briefs, confirmed that there was a contingent fee agreement. And under the cases cited on page 46 and 47 of our brief, there is no requirement that there be an assignment. As a matter of Texas law, if there's a contingent fee agreement present, an appellant would have received a justifiable interest in the cause of action. And that's, again, regardless of whether there was an assignment or just a granting of an interest. And so we feel that there's abundant Texas law— Thanks for that proposition. They're on page 46 through 47. The ones that are on 46 through 47. Okay. What do you say about Dow Chemical, at least the way it was described to us just now? That seems fairly direct case law to the contrary of what you're saying. So what about Dow Chemical? Well, we don't think that that overrides Texas state law, that provides the appellant herein a justifiable interest because we had a contingent fee agreement. As I understand, Dow Chemical, what it's saying is a lawyer, absent the special fraudulent circumstance that was mentioned, a lawyer can't sue on his client's claim. And that's what you have done here. So what is it about Dow Chemical that can be ignored? Well, in Texas law, that is cited— Is Dow Chemical a Texas Supreme Court opinion? No, no. No, but under the Texas cases that we cite on page 42 through 44, as well as Symentra, a Fifth Circuit case, and DP Solutions, another Fifth Circuit case, cited on page 44, we're entitled to sue on the tort of another theory. That's been sustained by the Fifth Circuit twice in those two cases, as well as the Texas cases. And, again, the justifiable contingent fee interest that we obtained provides us the standing, regardless of whether there was an assignment or not. I'd like to also correct counsel's statement that we were not hired for the RICO. In fact, we were. There was three retainer agreements. The third one was where we were retained and provided a contingent fee interest to pursue specifically the RICO matter, as well as the other state law actions that we had previously referred or pursued. And our position is that appellees, even the bank, had a fiduciary interest to ensure that the transaction at issue herein had gone without any problems. And, in fact, there are liens outstanding to this day, as I understand it, because there was an insufficient amount of money to pay off all the liens. And they ran a title search. They should have informed my clients that Hyman did not own the property. All of that is very irregular for a title insurance company, and the bank should have supervised what was being done, rather than just allow Donna and the title to perform in such negligent fashion. So that's all I have. I'd like to thank the Court, unless the Court has any other questions. No, thank you. I think we have your argument. All right. Thank you.